**RECEIVED**

AUG 2 4 2011

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CRIMINAL NO. 4:11-cr-099 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | INDICTMENT |
| LANE ANDERSON, PAUL KRAMER, | ) | 18 U.S.C. § 1343 |
| SHANNON FLICKINGER, and | ) | 18 U.S.C. § 1349 |
| DAVE MABLE, WEDGE | ) | |
| Defendants. | ) | |

9/28/11 Ordered at arraignment by Judge Bremer to amend indictment to add middle name of WEDGE to dft. Mable

**THE GRAND JURY CHARGES:**

**INTRODUCTORY ALLEGATIONS**

1. In or about March 2006, defendants LANE ANDERSON, SHANNON WEDGE FLICKINGER, and DAVE ̂MABLE formed a company called LDF Development. LDF Development was held out as being in the business of purchasing homes, renovating them, and selling them for a profit. LDF Development purchased more than 40 properties between 2006 and 2008.

2. LDF Development had trouble obtaining traditional bank financing in its own name. Thus, the company obtained financing through Kramer Mortgage Company for the purchase of properties. Defendant PAUL KRAMER was the principal of Kramer Mortgage Company. KRAMER had a line of credit at U.S. Bank that he used to fund the LDF Development transactions.

1

3. Initially, LDF Development purchased properties in its own name or in the names of defendants ANDERSON or MABLE, each of whom purchased at least three properties in early 2006. LDF Development was the real party in interest even when the properties were purchased in the names of ANDERSON or MABLE.

4. Beginning no later than June 2006, LDF Development began to experience financial difficulties as a result of the company's failure to renovate and sell houses quickly enough. These financial difficulties made it difficult for LDF Development to repay the loans from Kramer Mortgage Company and led ANDERSON, FLICKINGER, MABLE, and KRAMER, as well as other persons known and unknown to the Grand Jury, to devise a scheme to defraud and obtain money by false or fraudulent pretenses, representations, or promises.

5. It was part of the scheme to defraud that ANDERSON, FLICKINGER, and MABLE caused 13 properties to be transferred into FLICKINGER's name even though LDF Development remained the real party in interest. FLICKINGER was used as the "straw buyer" on these properties because LDF Development had trouble obtaining traditional bank financing in its own name and FLICKINGER had a better credit score than ANDERSON or MABLE. KRAMER served as the mortgage broker for most of these transactions and knew FLICKINGER was merely a straw buyer.

6. It was part of the scheme to defraud that ANDERSON, FLICKINGER, MABLE, and KRAMER inflated the price of many properties at the time they were sold to FLICKINGER so as to allow LDF Development to take out loans that were large enough to repay KRAMER and provide additional cash for LDF Development.

7. It was part of the scheme to defraud that the loan proceeds from many of the mortgage loans to FLICKINGER were used to make payments on loans on other properties owned by LDF Development or for distributions to ANDERSON, FLICKINGER, and MABLE.

8. It was part of the scheme to defraud that FLICKINGER, ANDERSON, MABLE, and KRAMER used many different lenders for the mortgage loans taken out in FLICKINGER's name so as to make it more difficult for any single lender to realize the number of loans taken out in FLICKINGER's name.

9. It was part of the scheme to defraud that the loan applications in FLICKINGER's name contained false statements regarding his income and sometimes contained false statements regarding his assets and other matters. The false statements were designed to ensure that FLICKINGER would be approved for loans for which he otherwise might not have qualified. ANDERSON, FLICKINGER, MABLE, and KRAMER were all aware that FLICKINGER's applications contained false statements.

10. It was part of the scheme to defraud that the loan applications in FLICKINGER's name sometimes failed to disclose fully the other mortgage loans that had been taken out in his name. The omissions were designed to ensure that FLICKINGER would be approved for loans for which he otherwise might not have qualified.

11. It was part of the scheme to defraud that ANDERSON modified an accountant's letter regarding the length of the accountant's business relationship with FLICKINGER without the accountant's knowledge or authorization, then sent the modified letter to prospective lenders for the purpose of helping FLICKINGER qualify for loans.

12. It was part of the scheme to defraud that ANDERSON and MABLE found other straw buyers to purchase homes from LDF Development after FLICKINGER's name could no longer be used. LDF Development paid the straw buyers for their involvement. LDF Development remained the real party in interest on these homes and provided down payment money for the straw purchases.

13. It was part of the scheme to defraud that LDF Development continued to purchase new properties after June 2006 and obtained loans in excess of the purchase price. ANDERSON, MABLE, FLICKINGER, and KRAMER justified the inflated loans on the basis that the excess money would be used to renovate the properties and increase their value. On many occasions, however, ANDERSON, MABLE, and FLICKINGER used the excess funds to make payments on other loans from KRAMER or for other purposes besides renovation.

14. It was part of the scheme to defraud that ANDERSON and KRAMER used or caused to be used interstate wires to send loan applications to mortgage lenders in connection with loan applications in FLICKINGER's name.

15. It was part of the scheme to defraud that ANDERSON and KRAMER used or caused to be used interstate wires to transfer loan proceeds from the mortgage lenders to KRAMER's place of business.

### Count 1
### (Conspiracy to Commit Wire Fraud)

16. The Grand Jury realleges and restates paragraphs 1-15 of the Introductory Allegations as if fully set forth herein.

17. Beginning as early as June 2006, and continuing up to and including November 2008, in the Southern District of Iowa and elsewhere, defendants ANDERSON, MABLE, FLICKINGER, and KRAMER knowingly and willfully reached an agreement and understanding with each other and other persons known and unknown to the Grand Jury to commit wire fraud; that is, to devise a scheme or artifice to defraud and obtain money by materially false and fraudulent pretenses, representations and promises, and to transmit or cause to be transmitted by means of wire, radio or television communication in interstate commerce any writings, signs, signals, pictures or sounds for the purpose of executing such scheme or artifice.

18. In furtherance of the conspiracy, and to achieve its objects, the following overt acts, among others, were knowingly and willfully committed by the specified defendants in the Southern District of Iowa and elsewhere:

   a. On or about December 5, 2006, defendants KRAMER and ANDERSON submitted, or caused to be submitted, a loan application containing false statements to ABN AMRO Mortgage Group, Inc., for FLICKINGER's straw purchase of a home from ANDERSON in the 4000 block of Cambridge Street, Des Moines, Iowa, the exact address known to the Grand Jury;

   b. On or about December 6, 2006, defendants KRAMER and ANDERSON caused the interstate wire transfer of $102,195.40 from ABN AMRO Mortgage Group, Inc., to KRAMER's place of business in the Southern District of Iowa;

   c. On or about December 18, 2006, defendants KRAMER and ANDERSON submitted, or caused to be submitted, a loan application containing false

    statements to ABN AMRO Mortgage Group, Inc., for FLICKINGER's straw purchase of a home from LDF Development in the 3400 block of Cambridge Street, Des Moines, Iowa, the exact address known to the Grand Jury;

d. On or about December 18, 2006, defendants KRAMER and ANDERSON caused the interstate wire transfer of $86,106.40 from ABN AMRO Mortgage Group, Inc., to KRAMER's place of business in the Southern District of Iowa;

e. On or about December 22, 2006, defendants KRAMER and ANDERSON submitted, or caused to be submitted, a loan application containing false statements to Everbank for FLICKINGER's straw purchase of a home from LDF Development in the 3000 block of York Street, Des Moines, Iowa, the exact address known to the Grand Jury;

f. On or about January 5, 2007, defendants KRAMER and ANDERSON submitted, or caused to be submitted, a loan application containing false statements to Flagstar Bank for FLICKINGER's straw purchase of a home from LDF Development in the 2600 block of East 29th Street, Des Moines, Iowa, the exact address known to the Grand Jury;

g. On or about January 5, 2007, defendants KRAMER and ANDERSON caused the interstate wire transfer of $97,722.36 from Flagstar Bank to KRAMER's place of business in the Southern District of Iowa;

h. On or about January 23, 2007, defendants KRAMER and ANDERSON submitted, or caused to be submitted, a loan application containing false statements to First Magnus Financial Corp. for FLICKINGER's straw

purchase of a home from LDF Development in the 2000 block of 40th Street, Des Moines, Iowa, the exact address known to the Grand Jury;

i. On or about January 23, 2007, defendants KRAMER and ANDERSON caused the interstate wire transfer of $102,105.96 from First Magnus Financial Corp. to KRAMER's place of business in the Southern District of Iowa;

j. On or about February 2, 2007, defendants KRAMER and ANDERSON submitted, or caused to be submitted, a loan application containing false statements to Webster Bank NA for FLICKINGER's straw purchase of a home from LDF Development in the 5700 block of Clark Boulevard, Des Moines, Iowa, the exact address known to the Grand Jury;

k. On or about February 2, 2007, defendants KRAMER and ANDERSON caused the interstate wire transfer of $148,863.33 from Webster Bank NA to KRAMER's place of business in the Southern District of Iowa;

l. On or about February 5, 2007, defendants KRAMER and ANDERSON submitted, or caused to be submitted, a loan application containing false statements to First Magnus Financial Corp. for FLICKINGER's straw purchase of a home from LDF Development in the 400 block of Hull Avenue, Des Moines, Iowa, the exact address known to the Grand Jury;

m. On or about February 5, 2007, defendants KRAMER and ANDERSON caused the interstate wire transfer of $67,333.44 from First Magnus Financial Corp. to KRAMER's place of business in the Southern District of Iowa.

n. On or about April 30, 2007, defendants KRAMER and ANDERSON submitted, or caused to be submitted, a loan application containing false statements to Washington Mutual for FLICKINGER's straw purchase of a home from LDF Development in the 700 block of 26th Street, Des Moines, Iowa, the exact address known to the Grand Jury;

o. On or about April 30, 2007, defendants KRAMER and ANDERSON caused the interstate wire transfer of $61,189.94 from Washington Mutual to KRAMER's place of business in the Southern District of Iowa;

p. On or about April 30, 2007, defendants KRAMER and ANDERSON submitted, or caused to be submitted, a loan application containing false statements to Washington Mutual for FLICKINGER's straw purchase of a home from LDF Development in the 700 block of 26th Street, Des Moines, Iowa, the exact address known to the Grand Jury;

q. On or about April 30, 2007, defendants KRAMER and ANDERSON caused the interstate wire transfer of $61,284.47 from Washington Mutual to KRAMER's place of business in the Southern District of Iowa.

This is a violation of Title 18, United States Code, Sections 1343 and 1349.

**A TRUE BILL.**

/s/_____
FOREPERSON

Nicholas A. Klinefeldt
United States Attorney

By: /s/ *Stephen H. Locher*_____
Stephen H. Locher
Assistant United States Attorney

8